UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re CHARBEL ELIAS a/k/a CHARLIE
ELIAS,

        Debtor,      NOT FOR PUBLICATION
                **MEMORANDUM & ORDER**
                13-cv-01269 (CBA)
------------------------------------------------------------X
GEORGETTE FRANZONE, CAVALE-TONUZI
CORP., GEORGE F. LLC,

        Appellants,
 -against-

CHARBEL ELIAS a/k/a CHARLIE ELIAS,

        Appellee.
------------------------------------------------------------X

**AMON, Chief United States District Judge:**

  In this bankruptcy appeal, Appellants Georgette Franzone, Cavale-Tonuzi Corp. ("Cavale-Tonuzi"), and George F. LLC ("George F."), purported creditors of debtor Charbel Elias, appeal from an order of the United States Bankruptcy Court for the Eastern District of New York (Feller, Bankruptcy Judge), which denied a motion by Appellants purporting to seek relief from the automatic stay imposed in Elias's Chapter 7 bankruptcy case (the "motion"). On appeal, Appellants contend that the bankruptcy court abused its discretion in denying that motion as untimely, as well as in denying Appellants' request to amend the motion to correct its deficiencies and style it as a complaint objecting to discharge or dischargeability. For the reasons set forth below, the Court affirms the order of the bankruptcy court.

1

**BACKGROUND**

On July 16, 2012, Elias commenced this bankruptcy proceeding by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The petition listed both Georgette Franzone and George F. as unsecured creditors, with each holding a promissory note for a business loan in the amounts of $162,000 and $220,000, respectively. (Record on Appeal ("R.") 111-12.) Georgette Franzone was also listed as holding two additional claims, one for a violation of civil rights and one for a breach of a noncompete covenant, each for $0. (R.112.) The petition contained a creditor matrix listing the names and addresses of all creditors, which included addresses for, inter alia, "Carvale Tonuzi Corp," "Cavale Tonuzi Corp c/o Tomei & Assocs., PC," "George F LLC," "Georgette Franzone c/o Douglas Dollinger," "Georgette Franzone c/o Goldberg & Rimberg," and "Georgette Franzone." (R.130-31.)

On July 19, 2012, the bankruptcy court sent notice to all listed creditors that the initial meeting of creditors pursuant to 11 U.S.C. § 341 was scheduled for August 16, 2012. (R.142-46.) The notice also informed the creditors that the deadline to object to Elias's discharge or to challenge the dischargeability of certain debts was October 15, 2012 (R.145) – sixty days following the initial meeting of the creditors, as provided by Fed. R. Bankr. P. 4007(c) and 4004(a).

On October 15, 2012, Elias's counsel filed with the bankruptcy court a stipulation, signed by both himself and Franzone, pro se, agreeing that "the time period within which the creditor Georgette Franzone . . . may object to the debtor's discharge pursuant to 11 U.S.C. § 523 and 727 . . . is hereby extended through November 30, 2012." (R.387.) According to documents later filed with the bankruptcy court, on or about October 15, Franzone contacted Douglas R. Dollinger, her attorney in several state court actions against Elias, inquiring whether Dollinger

2

had received any documents related to Elias's bankruptcy proceedings. (R.480-81, 550.) Franzone learned that Dollinger had received a copy of the bankruptcy petition, and discovered from him that she had not received the petition or notice of the initial creditor meeting because the address listed for her in the creditor matrix was incorrect. (R.481, 550.) According to Franzone, Elias was aware that she had not lived at the address listed in the creditor matrix "for years." (R.481.) Dollinger thereafter contacted Elias's attorney, Joel Shafferman, and Shafferman agreed to file a stipulation extending the time for Franzone to file a complaint objecting to discharge or challenging dischargeability. (R.550-51.) Franzone and Shafferman each signed the stipulation and, according to Dollinger, it was thereafter dropped into the bankruptcy court's overnight drop box on October 15, and subsequently filed by the clerk's office.[1] (R.549-50.) Judge Feller, however, never so-ordered the stipulation.

Apparently believing that the stipulation had extended the time to file a complaint, Dollinger filed the motion at issue in this appeal on November 30, 2012, purportedly on behalf of all three Appellants. (R.158.) In the motion, Appellants argued that the automatic stay should be lifted because their claims in state court were not dischargeable under the exceptions to dischargeability listed at 11 U.S.C. § 523(a)(2), (4), & (6), and because the state court claims would provide grounds to deny a discharge under 11 U.S.C. § 727(a). (R.161.) In sum and substance, the motion claimed that Elias, along with a third party, Violette Tonuzi, had conspired to defraud Franzone out of her interest in Cavale-Tonuzi, a business for which Elias held a 33% interest, and of which Franzone was the sole preferred shareholder. (R.161-75.) Appellants argued that such conduct fell within the provisions of § 523 and § 727 prohibiting discharge or

---

[1] Although the bankruptcy court docket sheet indicates that Shafferman filed the stipulation, there is some dispute between the parties as to who actually filed the document with the bankruptcy court. (See, e.g., Elias Br. at 9-10; R.549-50.) It is not necessary for this Court to determine who actually filed the stipulation in order to resolve this appeal.

3

dischargeability in circumstances involving fraud or false pretenses. (R.161.) Although Appellants apparently sought to object to discharge or dischargeability, the motion was not in the form of a complaint initiating adversarial proceedings, as required by Fed. R. Bankr. P. 4004(a) & 4007(a) to raise such objections, and was instead entitled as a "Motion For Relief From The Automatic Stay." (R.160.) The motion did not request as relief that the debts in question be found nondischargeable, or that Elias be barred from discharge entirely; rather, the only relief explicitly requested was an "Order . . . granting [Appellants'] application [for] relief from the automatic stay." (R.175.)

Elias filed a response to the motion on December 26, 2012, arguing primarily that, because the bankruptcy court had not so-ordered the October 15 stipulation, the motion was untimely. (R.381-82.) Elias further argued that, even if timely, the motion should be denied because it was not in the form of a complaint as required by the Bankruptcy Rules to raise such an objection. (R.382-83.) Elias also challenged the factual basis for the motion. (R.388-421.) The Appellants filed a reply on January 7, 2013, explaining the reasons for the last-minute filing of the stipulation, and addressing Elias's substantive arguments. (R.480-91.)

The bankruptcy court held oral argument on the motion on January 22, 2013. The court found that Franzone had "not filed a complaint objecting to discharge or dischargeability within the statutory deadline" (Transcript of Bankruptcy Court Oral Argument ("Bankruptcy Court Tr.") at 14), noting that because the stipulation "was never so ordered by the Court" it "never really became effective," as only the court, "not the parties," could order such an extension (id. at 16). The bankruptcy court went on to find that, even if the stipulation had been so-ordered, relief still would not be available because the motion was not a "complaint" as required by the Bankruptcy Rules. (Id. at 16-17.) As such, any complaint had not yet been filed, and would still

4

be untimely. Finally, the bankruptcy court noted that even "putting this motion in best light" and construing it as a motion to lift the automatic stay, relief was not appropriate because the proposed cause for lifting the stay – allowing Appellants to seek a determination in state court – was not available due to the failure to properly object to discharge or dischargeability. (Id. at 18.)

After the bankruptcy court gave its initial ruling, Dollinger argued that the motion should be found timely in any event because Franzone had not been served with notice of the petition. The bankruptcy court rejected the argument, finding that Franzone "kn[ew] about the proceeding a long time." (Id. at 19.) The court also rejected an oral motion by Dollinger to amend the motion to style it as a complaint, and to have it deemed filed nunc pro tunc in a timely manner. (Id. at 19-20.)

The bankruptcy court memorialized its decision in an order filed January 25, 2013. (R.8-12.) Franzone filed a timely notice of appeal to this Court on February 1, 2013. (R.1.) Shortly thereafter, on February 5, 2013, the bankruptcy court ordered Elias's debt discharged pursuant to 11 U.S.C. § 727. (Bankr. Ct. Docket Entry 35.)

## STANDARD OF REVIEW

On an appeal from the bankruptcy court, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. "Findings of fact . . . shall not be set aside unless clearly erroneous." Id. The bankruptcy court's "[c]onclusions of law are reviewed de novo." In re Bennett Funding Grp., Inc., 146 F.3d 136, 138 (2d Cir. 1998). "[T]he bankruptcy court's grant

or denial of a motion to lift an automatic stay is reviewed for abuse of discretion." Lamarche v. Miles, 416 B.R. 53, 58 (E.D.N.Y. 2009).

## DISCUSSION

A central difficulty attendant to the resolution of this appeal stems from the fact that it is not entirely clear what relief was sought by Appellants' motion. The motion itself was entitled a "Motion For Relief From The Automatic Stay" (R.160), and the only relief explicitly sought was, in fact, an order relieving the Appellants from the burden of that stay (R.175), thereby suggesting that the motion was one pursuant to 11 U.S.C. § 362(d). The motion, however, sought relief from the stay on the grounds that Elias's debts should not be discharged pursuant to § 727(a) or that the debts in question were not dischargeable pursuant to § 523(a). (R.160.) Franzone has maintained throughout the litigation, and argues on appeal, that the motion should therefore properly be construed as a complaint objecting to discharge and dischargeability. (See, e.g., Oral Argument Tr. 14 (acknowledgement by Dollinger that motion was intended to be a complaint objecting to discharge); Bankruptcy Court Tr. 20 (statement of Dollinger "asking the Court to construe it as a complaint"); Franzone Br. 18-24 (asking this Court to construe the motion as a complaint objecting to discharge or dischargeability).) The motion, however, is not in the form of a complaint, does not actually ask for a finding that the debts in question are not dischargeable or that discharge is improper, and does not explain why the Appellants are entitled to that relief in any event.

This Court need not resolve whether Appellants' motion is properly construed as a complaint objecting to discharge or dischargeability, or as a motion to lift the automatic stay, as the bankruptcy court's dismissal of the motion was proper in any event. If the motion is

6

construed as a complaint brought to challenge discharge or dischargeability, it is untimely; if it is construed as a motion to lift the automatic stay, it failed to provide any basis on which Franzone is entitled to that relief. As such, the Court affirms the bankruptcy court's dismissal of the motion.

I.   **Timeliness**

The bankruptcy court found that, to the extent the motion was a complaint objecting to discharge or dischargeability, it was untimely as it was filed outside the time provided by the Bankruptcy Rules for filing such a complaint. Appellants argue that the motion was timely filed because both parties signed a stipulation agreeing to extend that deadline.

The Bankruptcy Rules provide that a complaint to determine the dischargeability of a debt or a complaint objecting to a debtor's discharge must be filed within sixty days after the first meeting of creditors. See Fed. R. Bankr. P. 4007(c) (complaints objecting to dischargeability); id. 4004(a) (complaints objecting to discharge). On a motion by a party in interest, the bankruptcy court may extend that time "for cause"; such a motion "shall be filed before the time has expired." Fed. R. Bankr. P. 4007(c); 4004(b)(1). "The court may enlarge the time for taking action under Rules . . . 4004(a)[ and] 4007(c) . . . only to the extent and under the conditions stated in those rules." Fed. R. Bankr. P. 9006(b)(3).

Appellants' motion was unquestionably filed outside the time limits prescribed by Bankruptcy Rules 4004(a) and 4007(c). Although Franzone and Elias's attorney both signed a stipulation extending the time to object to discharge or dischargeability and filed that stipulation with the bankruptcy court, the stipulation was never so-ordered by the bankruptcy court. The Bankruptcy Rules provide that only "the court," and not the parties, may extend the time for filing a complaint. Fed. R. Bankr. P. 4007(c), 4004(b)(1). Thus, "[a] stipulation is ineffective to

7

extend time to file objections to discharge unless 'so ordered' by the court." In re Dombroff, 192 B.R. 615, 622 (S.D.N.Y. 1996). Because the bankruptcy court never so-ordered the extension, the deadline for filing any complaint remained October 15, 2012. Appellants' motion, filed November 30, 2012, was therefore untimely.[2]

Nonetheless, and notwithstanding the admonition of Rule 9006(b)(3) that the bankruptcy court may only extend the filing deadline under the conditions stated in Rules 4004(a) and 4007(c), the Second Circuit has held that the time periods imposed by those rules are "not jurisdictional and thus [are] subject to waiver, estoppel, and equitable tolling." In re Benedict, 90 F.3d 50, 54 (2d Cir. 1996); see also Kontrick v. Ryan, 540 U.S. 443, 456-60 (2004) (finding the Rule 4004(a) time limit nonjurisdictional and therefore subject to waiver).[3] Franzone argues that her motion should be deemed timely because she is entitled to equitable tolling due to her address being incorrectly listed on the creditor matrix attached to Elias's bankruptcy petition, or because Elias waived his right to challenge the timeliness of the motion when his attorney signed the stipulation.

## A. Equitable Tolling

The doctrine of equitable tolling "permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000). "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011)

---

[2] Even had the stipulation been effective, the stipulation only extended the time for Franzone to file a complaint; it did not purport to extend the time for Cavale-Tonuzi or George F. to do so. (R.387.) As such, the motion would have been untimely in any event to the extent it was filed on behalf of either Cavale-Tonuzi or George F.
[3] Courts have regularly interpreted the provisions of Rules 4007(c) and 4004(a) together "[b]ecause of the practical identity of the time prescriptions for objections to the discharge of any debts under § 727(a) and for objections to the discharge of particular debts under § 523(c)." Kontrick, 540 U.S. at 448 n.3.

(quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Extraordinary circumstances can include, inter alia, a defendant's fraudulent concealment of the facts that would have allowed the plaintiff to discover she had a claim, see, e.g., Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012), or circumstances where a plaintiff was actively pursuing judicial remedies but filed a defective pleading during the specified time period, see, e.g., Young v. United States, 535 U.S. 43, 50 (2002). Whatever the circumstances, "[r]easonable diligence is a prerequisite to the applicability of equitable tolling." Koch, 699 F.3d at 157.

There is no basis in this case for concluding that Franzone was entitled to equitable tolling of the filing deadline. Even if the Court credits Franzone's assertion that her address was listed incorrectly on the creditor matrix, and that she therefore was not personally aware of Elias's bankruptcy filing until October 15, it is undisputed that notice was also mailed to her via her attorney, Dollinger. (See R.9, 142; see also R.550 (memorandum by Dollinger stating that he "had received a copy of the Petition").) Typically, "[w]hen an attorney is representing a creditor in order to collect a debt outside of the bankruptcy, notice of the bankruptcy petition sent to that attorney by the debtor can be imputed to the creditor." In re Herman, 737 F.3d 449, 454 (7th Cir. 2013); see also In re Price, 871 F.2d 97, 99 (9th Cir. 1989); Linder v. Trump's Castle Assocs., 155 B.R. 102, 105 (D.N.J. 1993). Such notice can be imputed to the creditor so long as there is "a sufficient 'nexus between the creditor's retention of an attorney and the creditor's claim against the debtor.'" In re Herman, 737 F.3d at 454 (quoting In re Najjar, No. 06-10895, 2007 WL 1395399, at *4 (Bankr. S.D.N.Y. May 11, 2007)) (emphasis in Najjar). When the attorney represented the creditor in seeking to collect the very debt sought to be discharged, such a nexus exists. See, e.g., In re Price, 871 F.2d at 99 (when creditor's counsel "was pursuing the same claim in state court that the [creditor] now seeks to have declared nondischargeable," notice to

9

counsel was sufficient); In re Schicke, 290 B.R. 792, 803 (10th Cir. BAP 2003) (notice to "an attorney who represents the creditor in matters against a debtor prepetition, such as in obtaining or collecting a judgment that will be affected by discharge" is sufficient because such an attorney is "an agent of the creditor"); In re Linzer, 264 B.R. 243, 249 (Bankr. E.D.N.Y. 2001) ("[W]hen a non-bankruptcy counsel is actively engaged in prosecuting a creditor's claim against the debtor before a non-bankruptcy tribunal . . . that is a sufficient nexus to the bankruptcy case to justify imputing authorized agency.").

As Dollinger acknowledged both at oral argument on this appeal and in his papers before the bankruptcy court, he was, at the time this bankruptcy proceeding was filed, actively representing Franzone in state court actions related to the very debts that Elias sought to discharge. (See Oral Argument Tr. 5 (acknowledgement by Dollinger that he "represent[ed] Franzone] in State Court on the very property that is the subject of" the bankruptcy); R.550 (statement by Dollinger that he was Franzone's "counsel in the collateral matters").) Specifically, Dollinger was representing Franzone in state court cases litigating (a) the dissolution of Cavale-Tonuzi (R.220-21), (b) civil rights violations on the part of Elias stemming from the dispute over ownership of Cavale-Tonuzi (R.278-305), and (c) an action against Elias seeking to enforce a noncompete covenant in a settlement agreement reached between the parties (R.263-73)[4]; each issues directly related to the debts sought to be discharged in this bankruptcy proceeding. In those circumstances, the notice afforded Dollinger can fairly be imputed to Franzone: Dollinger's representation of Franzone was ongoing (see R.167 (noting that certain state law claims "were weeks away from trial" at the time of the bankruptcy petition)) and

---

[4] Although Franzone was represented by the law firm Goldberg & Rimberg PLLC at the time the action to enforce the settlement agreement was filed, the Court takes judicial notice of the fact that, according to the docket sheet in that case, Dollinger assumed representation of Franzone prior to the filing of Elias's bankruptcy petition.

10

involved the very debts that were at risk of being discharged in the bankruptcy action. As such, even if this Court were to credit Franzone's contention that she was personally unaware of the bankruptcy until October 15, she would not be entitled to equitable tolling because notice was provided to Dollinger.

Even if the notice to Dollinger was insufficient to impute knowledge to Franzone, the bankruptcy court explicitly rejected Franzone's contention that she was unaware of the bankruptcy proceeding and deadline, a factual finding that will not be disturbed absent clear error, see Fed. R. Bankr. P. 8013. When Dollinger raised the argument before the bankruptcy court that Franzone's address had been incorrectly listed, the bankruptcy court noted that Franzone had "know[n] about the proceeding a long time." (Tr. 19.) Considering that Franzone has provided no evidence that her address was actually incorrect other than her own statement, together with the fact that Dollinger admittedly received notice of the bankruptcy, that finding was not clear error. Furthermore, at oral argument before this Court, Franzone's attorney acknowledged several times that, although Franzone may not have received the actual copy of the bankruptcy petition, she was aware as early as July 2012 that Elias had commenced a bankruptcy proceeding. (See Oral Argument Tr. 4 (statement by Dollinger that during state court appearance they were informed "that there was a bankruptcy filed" and "Franzone was told about the bankruptcy"); id. at 27 (statement by Dollinger that he "advise[d]" Franzone on July 25 "that they're going to be filing or have filed a bankruptcy").) Given the bankruptcy court's factual finding that Franzone was aware of the bankruptcy long before she contacted Dollinger on October 15, and the fact that she apparently took no action to protect her rights in the bankruptcy proceedings until that time despite being aware of the bankruptcy for several months, the Court cannot find that Franzone is entitled to equitable tolling.

11

## B. Waiver

Franzone also asserts that Elias waived his right to object to her motion on timeliness grounds by signing the stipulation to extend the time to file a complaint. (Franzone Reply Br. at 4.) In some circumstances, a debtor's agreement to extend the filing deadline can waive a later timeliness objection. See In re Benedict, 90 F.3d at 55. In Benedict, after the filing deadline had already expired, the parties executed a stipulation reaffirming the debt in question and providing that, should the debtor rescind the reaffirmation, any complaint filed thereafter contesting dischargeability would be considered timely. Id. at 52. Several weeks later, at a hearing at which the debtor was present, the bankruptcy court signed an order extending the time to file a complaint for three months. Id. The debtor subsequently retained new counsel, and thereafter moved to vacate the bankruptcy court's order extending the time. Id at 53. The Second Circuit held that the debtor had "intentionally waived her right to object to the extension of time" by executing the original stipulation, and noted that the debtor "had the opportunity to object to the bankruptcy court's extension of time, but failed to do so" at the hearing. Id. at 55; see also In re Steiner, 209 B.R. 281, 285-86 (Bankr. E.D.N.Y. 1996) (finding debtor was equitably estopped from objecting to timeliness because creditor "forbore on commencing suit in reliance upon the stipulation" signed by the debtor, which court later so-ordered).

Nonetheless, waiver is not appropriate here because of a critical difference between this case and Benedict: The bankruptcy court in this case never so-ordered the parties' stipulation to extend the filing deadline. In Benedict, as well as in Steiner, the parties signed a stipulation extending the filing deadline, and that stipulation was later endorsed by the bankruptcy court. Only after that stipulation was so-ordered, and the new deadline rendered effective, did the debtors in those cases argue that the new deadline was ineffective. See In re Benedict, 90 F.3d at

55 ("[I]t was not until . . . after the March Order [extending the deadline] already was in effect[] that Benedict finally objected to the extension of time."); In re Steiner, 209 B.R. at 282-83 (neither party appealed order granting stipulated extension; it was not until debtor's motion to dismiss the subsequently-filed complaint that timeliness was raised). Here, by contrast, the bankruptcy court never so-ordered the filed stipulation. Because only such an action by the bankruptcy court could make the stipulation effective, the filing deadline was never extended from October 15, and Franzone's November 30 motion was untimely. Elias thereafter objected to that motion on timeliness grounds at the very first opportunity. The fact that Elias initially agreed to the extension of time is not dispositive; once the bankruptcy court refused to allow the extension, the complaint was untimely, and it was not improper for Elias to seek its dismissal on timeliness grounds.

To hold that Elias's signing of the stipulation alone would waive any opportunity for him to later object on timeliness grounds – as Franzone appears to argue – would undermine the bankruptcy court's exclusive role in determining whether to grant an extension of time to file such a complaint, cf. In re Chatkhan, 455 B.R. 365, 367-68 (Bankr. E.D.N.Y. 2011) (providing a list of considerations bankruptcy courts should consider in deciding whether to grant an extension). Such a rule would remove any discretion whatsoever from the bankruptcy court: A stipulation filed by the parties extending the time period would effectively be operative regardless of whether the court eventually signed it, as the creditor could simply file a complaint pursuant to the stipulation and later assert that the debtor waived the right to object on timeliness grounds, even if the bankruptcy court declined to endorse the extension. Rather, because a party seeking an extension is "obligated to determine that the court had received and approved the stipulation before he reasonably could rely on the extension it proposed," In re Dombroff, 192

13

B.R. at 622, this Court will not hold that stipulating to an extension of time waives the right to object to a late-filed complaint if the bankruptcy court does not approve the extension. Elias's timeliness objections, therefore, were not waived, and Franzone's objections to discharge or dischargeability were untimely.

## II.   Relief from the Automatic Stay

Dismissal of Franzone's motion was also proper to the extent that it sought relief from the automatic stay. The motion itself nowhere states why Appellants are entitled to relief from the automatic stay, nor suggests under what provision of § 362(d) relief is sought. Rather, the motion simply repeatedly states that the debts are not dischargeable under § 523(a) and that discharge should be denied pursuant to § 727(a), and makes arguments about the nature of those debts; issues relevant only to the question of discharge or dischargeability. As such, the motion provides no basis for providing relief from the automatic stay.

Even assuming that the motion sought relief from the automatic stay under the "for cause" provision of 11 U.S.C. § 362(d)(1), the bankruptcy court did not abuse its discretion in denying such relief. Any relief Franzone sought from the automatic stay would have been to allow her to continue pursuing her state court actions against Elias. Those state court actions, however, were brought to collect the very debts that Elias sought to have discharged in bankruptcy. Thus, in the absence of a finding that those debts were not dischargeable, or that Elias was not entitled to discharge, Franzone's attempts to pursue those claims in state court – were the automatic stay to be lifted – would be futile. There was therefore no cause for lifting the automatic stay, and the bankruptcy court did not abuse its discretion in declining to do so.[5]

---

[5] In any event, Dollinger disclaimed any intention to have brought a motion for relief from the stay, agreeing during oral argument before this Court that although he "called this a motion to stay," he was really seeking "to file a complaint objecting to the discharge of the debt." (Oral Argument Tr. 14.)

14

## III. Motion to Amend

Finally, the Appellants argue that, even if the motion was not in proper form to constitute a complaint objecting to discharge or dischargeability, the bankruptcy court should have allowed them to amend the motion to properly style it as such a complaint. The bankruptcy court did not err in denying that motion to amend. As that court properly concluded, because the motion was not, in fact, a complaint, there was no complaint that could possibly be amended. Any complaint actually filed by the Appellants would be an entirely new filing, made well after even the November 30 deadline that the parties stipulated to. Furthermore, even if the Appellants could properly amend the motion and have the amendment relate back to the date the motion was filed, any such amendment would be futile, as the motion itself was filed after the expiration of the deadline for filing a complaint objecting to discharge or dischargeability, see McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (motion to amend complaint may be denied on ground of, inter alia, futility). Thus, even if such an amendment was permissible, it would be dismissed as untimely. The Court therefore affirms the bankruptcy court's denial of Appellants' motion to amend.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's order dismissing the motion and denying leave to amend is affirmed.

SO ORDERED.

Dated: Brooklyn, N.Y.
March 24, 2014

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge

15